UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

VICTORIA LOWERY LEECH                                                    PLAINTIFF

V.                                        CIVIL ACTION NO. 3:21-CV-647-KHJ-FKB

MISSISSIPPI COLLEGE                                                      DEFENDANT

ORDER

Before the Court is Defendant Mississippi College's [30] Motion for Partial

Dismissal. The Court grants the motion in part and denies it in part for the

following reasons.

I.      Background

In 2005, Defendant Mississippi College ("MC") hired Plaintiff Victoria Leech

"to build a new and improved Advocacy Program" for its law school. First Am.

Compl. [29] ¶ 6. After achieving this goal, MC awarded Leech a "five-year

presumptively renewable contract" in 2010 that granted her "the ABA's coveted

Standard 405(c) status." *Id.* ¶ 18. Standard 405(c) status is like tenure for non-

doctrinal law school faculty, providing "protections of academic freedom" and job

security. *Id.* ¶ 19. Leech alleges that "once 405(c) status is incorporated into an

employment contract, the employment contract cannot be terminated except for

good cause or for the termination or material modification of the entire program."

*Id.* ¶ 22. Over the next decade, Leech received "at least two renewals" of her five-

year contract. *Id.* ¶ 23.

Despite her success, in 2014 Leech contends she "began to experience discrimination" after MC appointed Jonathan Will, a white male, as Associate Dean of the law school. *Id.* ¶¶ 26, 28. Leech alleges Will "engag[ed] in discriminatory and retaliatory behavior against [her]" for the rest of her time at the law school. *Id.* ¶ 28. This alleged behavior included Will publicly reprimanding Leech during faculty meetings, publicly "maligning" her Advocacy Program, "micromanag[ing] each of [Leech's] decisions relating to her curriculum," removing her from leadership roles at the law school, and "shouting and making derogatory comments about [Leech] inside his office." *Id.* ¶¶ 29–30, 33, 36, 43. More broadly, Leech alleges Will generally treated male faculty members with respect but "[Leech] and other female employees received harassment and discrimination instead." *See id.* ¶¶ 29, 34, 44–46.

After Will removed Leech from a committee assignment, Leech reported Will's conduct to Patricia Bennett, the law school's Dean. *Id.* ¶ 38. Although Leech's committee assignment was reinstated, MC did not take any action against Will. *Id.* Instead, Leech contends Will "continued his discrimination" against her and "caused [her] to be removed" from her position as a legal writing and appellate advocacy instructor, replacing her with "inexperienced, younger, and cheaper professors." *Id.* ¶¶ 39–41. Leech alleges she and other faculty members reported Will's behavior to MC on many other occasions, but MC did not take any action. *Id.* ¶¶ 47–51.

In February 2020, the American Bar Association ("ABA") visited the law school for its required seven-year assessment. *Id* ¶ 52. The ABA questioned Leech and other faculty members about their experience with 405(c) contracts. *Id.* ¶ 53. Some faculty members expressed concerns about the contracts, as well as discriminatory conduct and other employment issues. *Id.* ¶ 55. After the ABA reported its concerns to the administration, Bennett "expressed her frustration with [Leech] and other professors . . . who would dare to 'air the school's dirty laundry.'" *Id.* ¶ 57.

In May 2020, Leech "grew concerned when she did not receive her annual Letter of Contract from the school." *Id.* ¶ 60. Leech contacted Dean Bennett, who assured Leech several times that her contract would be issued soon. *Id.* ¶¶ 61–62. But in June, the law school administration called a meeting of tenure and tenure-track faculty to discuss 405(c) faculty. *Id.* ¶ 63. Leech and other non-tenure faculty "were not informed of the meeting and were not invited to attend." *Id.* ¶ 64. At the meeting, Leech alleges Dean Bennett "wrongfully and falsely" told the tenured faculty that the ABA "had expressed concerns about the 405(c) employment contracts that would require an end to such contracts or a limitation of their use." *Id.* ¶ 67. Dean Bennett allegedly misled the tenured faculty to believe that "unless some or all of the 405(c) faculty members were terminated," she would have to terminate the tenured faculty's contracts or reduce their pay. *Id.* ¶ 71–72.

Based on these representations, Dean Bennett recommended that the faculty vote to terminate Leech and one other 405(c) faculty member, both of whom are

3

white. *Id.* ¶ 73. At a second meeting of tenured faculty, eight professors voted to terminate Leech's position and eight professors voted to keep it.[1] *Id.* ¶ 81. Faced with a tie, Dean Bennett referred the matter to MC's main campus for final determination. *Id.* ¶ 82.

Leech continued to work over the summer without knowing whether MC planned to renew her 405(c) contract. *Id.* ¶ 90. Finally, on August 4, Dean Bennett contacted Leech and tried "to persuade [her] to forgo her position as a [405(c)] faculty member and accept a staff position at the school." *Id.* ¶¶ 91–92. Leech refused. *Id.* Later that month Leech received a "one-year non-405(c) contract," stating that this would be her last contract as Director of Advocacy for the law school. *Id.* ¶¶ 99–100.  Leech did not sign the contract. *Id.* ¶ 104.

On August 25, 2020, the ABA released its official report about MC's law school. *Id.* ¶ 106. The ABA explained it received multiple reports of discrimination from law school's faculty; the law school took no concrete efforts to create a diverse faculty; and several faculty members who qualified for 405(c) status had not received it. *Id.*

In September 2020, Dean Bennett called a meeting to discuss the ABA's findings. *Id.* ¶ 107. Dean Bennett again "scolded the faculty for raising concerns regarding discrimination," claiming that such accusations "were jeopardizing the law school's accreditation." *Id.* ¶¶ 111–12. She also announced the administration's

---

[1] The actual decision made at this meeting was whether Leech's advocacy program "had been materially modified or terminated." [29] ¶ 80. If the faculty found that it had, then Leech could be terminated. *Id.*

plan to grant 405(c) status to a black faculty member. *Id.* ¶ 118. Leech alleges they did this so the law school could "bring itself into compliance with the ABA's 405(c) concerns" and increase faculty diversity. *Id.* ¶ 120. The law school then offered 405(c) status to another black legal writing instructor in Spring 2020. *Id.* ¶ 122.

Leech alleges MC's decision to cut her Advocacy Program and to not renew her 405(c) status was a "plot" to "kill three birds with one stone." MC could (1) increase faculty diversity; (2) punish Leech for not lying to ABA investigators; and (3) punish Leech for reporting Will's discriminatory conduct. *Id.* ¶¶ 84, 89.

After the September meeting, Leech filed a formal complaint with Dean Bennett about Will's discriminatory conduct and the non-renewal of her 405(c) status. *Id.* ¶ 125. Neither Dean Bennett nor MC responded. *Id.* ¶ 126. And, although Leech's new contract reflected she would be employed by the law school for the rest of the school year, her name "no longer appeared on the 2021 Spring Semester schedule." *Id.* ¶ 130. Leech told Dean Bennett that "she believed she had been constructively terminated due to the law school terminating her classes for the Spring 2021 semester." *Id.* ¶ 133. Dean Bennett did not deny that Leech had been "ousted from the classroom," but she insisted that Leech would remain as a faculty advisor to the Moot Court Board. *Id.* Dissatisfied with this, Leech notified Dean Bennett that "she had been constructively terminated" and resigned from her position on November 17, 2020. Def.'s Mot. Dismiss [30-1] at 8.

Leech filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on November 23, 2020. *Id.* She received her

Right to Sue letter on July 12, 2021. Def.'s Mot. Dismiss [30-2]. She then sued MC,

alleging twelve counts:

1. Breach of Contract/Wrongful Termination;

2. Gender Discrimination—including Disparate Impact and Hostile Work Environment;

3. Race Discrimination—including Disparate Impact and Hostile Work Environment;

4. Age Discrimination in Violation of Title VII and the Age Discrimination in Employment Act ("ADEA");

5. Retaliation in Violation of Title VII;

6. Retaliation in Violation of Mississippi Law;

7. Constructive Discharge;

8. Violation of the Equal Pay Act;

9. Breach of the Implied Duty of Good Faith and Fair Dealing;

10. Intentional Infliction of Emotional Distress ("IIED");

11. Negligent Supervision; and

12. Bad Faith/Reckless Disregard.

Pl.'s First Am. Compl. [29] ¶¶ 135–240.

MC now moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss

Count 2's disparate impact claim based on gender, Count 3's disparate impact and

hostile work environment claims based on race, and Count 4's age claim for failure

to exhaust administrative remedies or, in the alternative, for failure to state a

claim. Def.'s Mem. Supp. Mot. Dismiss [31] at 5–12. It also moves to dismiss Count

4's Age Discrimination in Violation of Title VII claim, Count 6, Count 7, Count 8, Count 10, Count 11, and Count 12 for failure to state a claim. [31] at 13–19.

## II.    Exhaustion of Remedies

### A.  Standard

A plaintiff must timely exhaust her administrative remedies by filing a charge of discrimination with the EEOC before filing suit under Title VII or the ADEA. *Melgar v. T.B. Butler Publ'g Co., Inc.*, 931 F.3d 375, 378 (5th Cir. 2019). In Mississippi, such charges must be filed within 180 days of the alleged discriminatory conduct. 42 U.S.C. § 2000e-5(e)(1) (Title VII); 29 U.S.C. § 626(d)(1) (ADEA).[2] Based on the remedial purpose of Title VII and the ADEA, a court should liberally construe EEOC charges to allow workers' claims to be litigated. *Pacheco v. Mineta*, 448 F.3d 783, 792 (5th Cir. 2006) (citation omitted); *Jefferson v. Christus St. Joseph Hosp.*, 374 F. App'x 485, 489–90 (5th Cir. 2010). A plaintiff need not "check a certain box or recite a specific incantation to exhaust his or her administrative remedies." *Pacheco*, 448 F.3d at 792. Rather, the "crucial element of a charge of discrimination is the factual statement contained therein." *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 462 (5th Cir. 1970).

Notwithstanding the remedial nature of Title VII and the ADEA, "[c]ourts should not condone lawsuits that exceed the scope of EEOC exhaustion, because doing so would thwart the administrative process and peremptorily substitute

---

[2] The 180-day limit applies because Mississippi is a "non-deferral state." *See Adams v. Cal-Ark Intern., Inc.*, 159 F. Supp. 2d 402, 406–07 (E.D. Tex. 2001) (explaining the difference between deferral and non-deferral states).

litigation for conciliation." *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008). Consequently, a court should find that a claim is exhausted only if it could have been "reasonably . . . expected to grow out of the charge of discrimination." *Id.*

   B.   Analysis

      i.   Counts 2 and 3: Disparate Impact

In deciding whether Leech exhausted her administrative remedies on her disparate impact claims, "a review of the *prima facie* case for disparate impact is relevant."[3] *Pacheco*, 448 F.3d at 791. A disparate impact claim is distinct from a disparate treatment claim. *Id.* at 787. "Disparate-treatment discrimination addresses employment actions that treat an employee worse than others based on the employee's race, color, religion, sex, or national origin." *Id.* In such cases, "proof and finding of discriminatory motive is required." *Id.* "Disparate-impact discrimination, on the other hand, addresses employment practices or policies that are facially neutral in their treatment of . . . protected groups, but, in fact, have a disproportionally adverse effect on such . . . group[s]." *Id.* In such cases, "proof or finding of discriminatory motive is not required." *Id.*

In sum, there are two elements to a disparate-impact claim: (1) a facially neutral policy; (2) that has a disproportionately adverse effect on a protected class. *Id.* at 791. Whether a plaintiff has exhausted her administrative remedies for a

---

[3] Although a review of a prima facie case for disparate impact is helpful in determining whether Leech exhausted her administrative remedies, Leech was not required to allege a prima facie case in her EEOC charge to exhaust her administrative remedies. *Pacheco*, 448 F.3d at 792.

disparate impact claim, the identification of a neutral employment policy is dispositive as it "is the cornerstone of any EEOC disparate-impact investigation." *See id.* at 792.

Leech did not exhaust her administrative remedies on her disparate-impact claims because she did not identify a facially neutral policy in her EEOC charge. Leech points to two "employment practices" that "disproportionately affected white, female professors" to support her disparate impact claim. *See* [34] at 10–11. An EEOC investigation into a disparate-impact claim could not have reasonably been expected to grow out of either practice. Here's why.

First, Leech points to MC's "scheme to eliminate non-minority faculty members with earned 405(c) status" and replace them with "minority faculty members." *Id.* at 10. This does not support a disparate-impact claim because it facially alleges disparate treatment, not a neutral employment policy. *See Pacheco*, 448 F.3d at 791. Although MC's alleged conduct "clearly supports claims for unfair and intentional discrimination, [it] does not even suggest claims under a disparate impact theory." *Id.* Second, Leech points to MC's practice of "chid[ing] or scold[ing]" female professors for taking vacation days while allowing male faculty "to take even unearned leave during the semester without comment." [34] at 10–11. Again, this is not a facially neutral employment policy. Even if it were, Leech did not mention this policy in her charge of discrimination.

Because a disparate impact claim could not have been reasonably expected to grow out of Leech's EEOC charge of discrimination, she did not exhaust her

administrative remedies on those claims. Normally, dismissal of a claim for failure to exhaust administrative remedies is without prejudice. *Stroy v. Gibson ex rel. Dept. of Veteran Affs.*, 896 F.3d 693, 698 n.2 (5th Cir. 2018). When exhaustion is no longer possible, though, dismissal may be with prejudice. *Dawson Farms, LLC v. Farm Serv. Agency*, 504 F.3d 592, 607 (5th Cir. 2007). Because more than 180 days have passed since Leech stopped working for MC, she is time-barred from asserting a disparate-impact claim with the EEOC and exhaustion is no longer possible. These claims are dismissed with prejudice.

ii.    Count 3: Race-Based Hostile Work Environment

A hostile work environment claim is not "duplicative" of discrete Title VII claims; "rather, [it] represents a more or less distinct factual scenario." *Walton-Lentz v. Innophos, Inc.*, 476 F. App'x 566, 570 (5th Cir. 2012). So a hostile work environment claim cannot be "reasonably expected to grow out of" an EEOC charge unless the charge at least mentions some facts underlying that claim. *See id.* (quoting *Pacheco*, 448 F.3d at 789). A race-based hostile work environment claim has five elements: "(1) the plaintiff belongs to a protected group; (2) the plaintiff was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action." *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002). For the harassment to "affect a term, condition, or privilege of employment . . . it must be 'sufficiently severe or pervasive to alter the

conditions of the victim's employment and create an abusive working environment.'"
*Id.* (quoting *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21 (1993)).

Leech did not exhaust her administrative remedies for her race-based hostile work environment claim. Although Leech's EEOC charge alleges discrete acts of racial discrimination and a hostile-work environment based on gender, it mentions no facts underlying a hostile work environment claim based on race. Leech points to several statements in her EEOC charge, arguing that they support a race-based hostile-work-environment claim. *See* [34] at 7-8. But those statements focus on gender rather than race. For example, Leech alleged that:

- Associate Dean Jonathan Will has discriminated against *female* professors in the form of discriminatory and retaliatory action. While Dean Will has acted cordially with *male* professors who participated in discussions regarding the direction of the law school, Professor Lowery and other *female* faculty members have received retaliation for speaking against a policy or decision of administration, especially policies championed or supported by Dean Will;

- After Professor Lowery expressed professional disagreement with a *male* department chair's opinion . . . Dean Will reprimanded her for challenging the new director's opinion;

- Moreover, during this August 4, 2020 conversation, Dean Bennett and Professor Lowery also discussed the *gender* discrimination issues going on at the school. Specifically, despite having previously discussed the hostile work environment and disparate treatment by Dean Will and other *male* professors . . .

11

[30-1] at 2, 6 (emphasis added). Leech's EEOC charge contains no mention of "severe or pervasive" harassment based on race. Instead, her allegations of racial discrimination focus entirely on the discrete act of Mississippi College replacing her 405(c) position with an African American employee. *See* [30-1] at 8. This discrete Title VII claim is distinct from a hostile work environment claim and is insufficient for Leech to exhaust her administrative remedies on a race-based hostile work environment claim.

Because a race-based hostile work environment claim based could not have been reasonably expected to grow out of Leech's EEOC charge of discrimination, she did not exhaust her administrative remedies on that claim. And, because more than 180 days have passed since Leech stopped working at MC, she is time-barred from asserting a race-based hostile work environment claim with the EEOC and exhaustion is no longer possible. *See Dawson Farms*, 504 F.3d at 607. This claim is dismissed with prejudice.

### iii.    Count 4: Age Discrimination

An ADEA claim could not have been reasonably expected to grow out of Leech's EEOC charge of discrimination. Leech's charge is nearly eight pages long. *See* [30-1]. Throughout the charge, she raises many allegations of discrimination based on gender, color, and race. *See* [30-1] at 2–3, 6, 8 (alleging that MC's actions "have resulted in adverse employment decisions against [Leech] based on gender, color, and race" and "[Leech's] position had already been terminated as a result of discrimination based on race, color, and sex"). Leech does not include a single

explicit allegation of age-based discrimination. *See Ahuja v. Detica, Inc.*, 742 F. Supp. 2d 96, 106–08 (D.D.C. 2010) (holding that plaintiff failed to exhaust her administrative remedies for her ADEA claim after "omitt[ing] a single explicit allegation of being discriminated against based on her age in the over eight pages, single space description" of her intake questionnaire). And although checking a box is not needed for Leech to exhaust her administrative remedies, Leech failed to check the age discrimination box despite checking the race, color, sex, and retaliation boxes. *See* [30-1] at 8. Taken together, Leech's failure to check the age discrimination box or include any explicit allegations of age discrimination in her eight-page charge undermine her claim that an investigation of age discrimination could reasonably be expected to grow out of her EEOC charge. *See Ahuja*, 742 F. Supp. 2d at 107.

Leech argues she sufficiently raised age discrimination in her EEOC charge by stating that "two years ago, Dean Will succeeded in removing Professor Lowery from the legal writing program all together, hiring, instead, less experienced, younger, and cheaper professors to teach [Leech's courses]." [34] at 6.  Her argument fails for two reasons. First, that statement is the only reference to age in Leech's eight-page EEOC charge. And it is not "specific or elaborate enough to allow the EEOC to infer the existence" of Leech's purported ADEA claims. *See Ahuja*, 742 F. Supp. 2d at 107; *see also Hodge v. United Airlines*, 666 F. Supp. 14, 22 (D.D.C. 2009) (finding that a plaintiff's sole statement that he "wrote a letter of harassment" was not "specific or elaborate enough to allow the EEOC to infer the

existence of a hostile work environment claim"). Second, the action Leech refers to in the statement occurred two years before she filed her EEOC charge. In Mississippi, a charge made under the ADEA must be filed with the EEOC "within 180 days after the alleged unlawful practice occurred." 29 U.S.C. § 626(d)(1)(A); *see also Harding v. Huntington Ingalls Indus.*, No. 1:15-CV-274, 2015 WL 6812242, at *2 (S.D. Miss. Nov. 5, 2015) (holding that "any claims based on employment actions occurring more than 180 days before [the EEOC charge was filed] may not be pursued under Title VII"). Accordingly, even if Leech's statement had sufficiently raised age discrimination in her EEOC charge, it was time-barred under 29 U.S.C. § 626.

Because an ADEA claim could not have been reasonably expected to grow out of Leech's EEOC charge of discrimination, Leech did not exhaust her administrative remedies on that claim. And because more than 180 days have passed since Leech stopped working at MC, she is time-barred from asserting an age discrimination claim with the EEOC and exhaustion is no longer possible. *See Dawson Farms*, 504 F.3d at 607.  This claim is dismissed with prejudice.

III.    Failure to State a Claim

A. Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Witherspoon v. Waybourn*, No. 21-10407, 2022 WL 2188530, at *1 (5th Cir. June 17, 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The facts must be

viewed "in the light most favorable to the plaintiff," but the Court need not "strain to find inferences favorable to plaintiffs nor accept conclusory allegations, unwarranted deductions, or legal conclusions." *Id.* (internal quotations and citations omitted). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft*, 556 U.S. at 679. Mere "formulaic recitations of the elements" of a cause of action will not suffice. *Id.* at 681 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

    B.  Analysis

       i.    Count 4: Title VII Age Discrimination

Title VII does not prohibit age discrimination. *See* 42 U.S.C. § 2000e-2 (prohibiting discrimination based on "an individual's race, color, religion, sex, or national origin"); *Avina v. JP Morgan Chase Bank, N.A.*, 413 F. App'x 764, 766 n.4 (5th Cir. 2011). Accordingly, Leech's claim for age discrimination in violation of Title VII is dismissed.

      ii.    Count 6: State-Law Retaliatory Discharge

Leech does not address the state law retaliatory discharge claim. "A plaintiff abandons claims when [she] fails to address the claims or oppose a motion challenging those claims." *Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 459 (5th Cir. 2022). Accordingly, the Court grants MC's motion as to this claim and dismisses it with prejudice.

### iii.    Count 7: Constructive Discharge

"Under federal law, the constructive discharge doctrine is an alternative way of proving an adverse employment action in Title VII and other cases, but constructive discharge is not itself a cause of action." *Wells v. City of Alexandria*, No. 03-30750, 2004 WL 909735, at *3 (5th Cir. Apr. 29, 2004). Leech does not contest that constructive discharge is not an actionable claim. [34] at 22. Accordingly, Leech's independent claim for constructive discharge is dismissed.

### iv.    Count 8: Equal Pay Act

"[T]o establish a claim under the Equal Pay Act, the plaintiff must show (1) that her employer is subject to the Act; (2) that she performed work in a position requiring equal skill, effort, and responsibility under similar working conditions; and (3) that she was paid less than members of the opposite sex." *Jones v. Flagship Int'l*, 793 F.2d 714, 722–23 (5th Cir. 1986). "The Act necessarily requires a plaintiff to compare her skill, effort, responsibility and salary with a person who is or was similarly situated." *Id.*

Leech fails to state a claim under the Equal Pay Act because she has not specifically identified a similarly situated male employee who was paid more than she was for the same work. Rather, Leech conclusively states that she was "paid a lower wage than the male employees doing substantially equal work." [29] ¶ 209. A mere "formulaic recitation of the elements" of the Equal Pay Act is not enough, however, for Leech's claim to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678; *see also Turner v. Copeland Grp. USA, Inc.*, No. 4:21-CV-640, 2022 WL 1508446, at *2–

16

3, (S.D. Tex. May 10, 2022) (dismissing plaintiff's Equal Pay Act claim after plaintiff failed to identify a similarly situated employee); *Boudreaux v. Stranco Field Servs., LLC*, No. 18-5569, 2019 WL 2142045, at *6–7 (E.D. La. May 16, 2019) (similar); *McLin v. Chiles*, No. 3:14-CV-636, 2015 WL 898280, at *4 (S.D. Miss. Mar. 3, 2015) (similar); *Trevino-Garcia v. Univ. of Tex. Health Sci. Ctr. – Sch. of Med.*, No. SA-9-CA-572, 2009 WL 5195962, at *2–3 (W.D. Tex. Dec. 21, 2009) (similar).

Leech cites *Muslow v. Board of Supervisors of Louisiana State University and Agriculture and Mechanical College*, No. 19-11793, 2020 WL 6483138 (E.D. La. Nov. 4, 2020), to argue that dismissal of her claim is premature and "further discovery will reveal relevant details to the salaries of [Leech's] comparators." [34] at 20. But in *Muslow*, the plaintiffs identified specific male co-workers that were in the same paygrade and who were allegedly being paid higher salaries. *See Muslow*, 2020 WL 6483138, at *9. Contrarily, Leech does not point to a single specific similarly situated male employee who was paid a higher salary. Accordingly, the Court grants MC's motion as to this claim

     v.    Count 10: Intentional Infliction of Emotional Distress

An IIED claim under Mississippi law has five elements:

> (1) the defendant acted willfully or wantonly towards the plaintiff by committing certain described actions; (2) the defendant's acts are one which evoke outrage ore revulsion in civilized society; (3) the acts were directed at, or intended to cause harm to, the plaintiff; (4) the plaintiff suffered severe emotional distress as a direct result of the acts of the defendant; and (5) such resulting emotional distress was foreseeable from the intentional acts of the defendant.

17

*Pointer v. Rite Aid Headquarters Corp.*, 327 So. 3d 159, 171 (Miss. Ct. App. 2021). The standard for an IIED claim is "very high." *Id.* The alleged conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Bowden v. Young*, 120 So. 3d 971, 980 (Miss. 2013). Liability for IIED "does not extend to mere insults, indignities, threats, annoyances, petty oppression, or other trivialities." *Hays v. LaForge*, 333 So. 3d 595, 608–09 (Miss. Ct. App. 2022) (quoting *Brown v. Inter-City Fed. Bank for Sav.*, 738 So. 2d 262, 265 (Miss. Ct. App. 1999)).

Consequently, "damages for [IIED] are usually not recoverable in mere employment disputes." *S. Farm Bureau Life Ins. Co. v. Thomas*, 299 So. 3d 752, 759 (Miss. 2020) (citation omitted). "Only in the most unusual cases does the conduct move out of the realm of an ordinary employment dispute into the classification of extreme and outrageous, as required for [an IIED claim]." *Id.* (quoting *Prunty v. Ark. Freightways, Inc.*, 16 F.3d 649, 654 (5th Cir. 1994)). "[M]ere employment disputes not actionable through [IIED] claims include unfair criticism of job performance, poor evaluations, demands that employees quit or face termination based on fabricated reasons, harassment, and termination." *Hays*, 222 So. 3d at 609. An IIED claim may arise in employment cases "involving a pattern of deliberate, repeated harassment over a period of time." *Seibert v. Jackson Cnty.*, 851 F.3d 430, 438 (5th Cir. 2017); *Lee v. Golden Triangle Plan. & Dev. Dist. Inc.*, 797 So. 2d 845, 851 (Miss. 2001).

Notwithstanding the high bar for IIED claims in Mississippi employment cases, Leech has pled sufficient facts to overcome a 12(b)(6) motion. She points to six specific assertions in her Complaint to support her IIED claim:

- Former Associate Dean Will's constant public reprimand and harassment toward [her];

- Former Associate Dean Will's public malignment of [her] Advocacy Program, despite the program's national success;

- Former Associate Dean Will subject[ing] [her] to countless sanctions;

- Former Associate Dean Will's public[ly] attack[ing] her professional opinions, while granting academic freedom to male faculty members;

- Former Associate Dean Will's intentional act to remove [her] from a committee assignment during an open meeting in order to humiliate and belittle [her] in front of her peers; and

- Former Associate Dean Will shrieking and beating his fists in front of female faculty, including [her].

[34] at 21 (citing [29] ¶¶ 29–30, 32–33, 37, 44). It is unlikely that any of these allegations individually would amount to the "extreme and outrageous conduct" required for an IIED claim under Mississippi law. But taken together and liberally construed, these actions suggest a "pattern of deliberate, repeated harassment" from when MC hired Will in 2014 until Leech left MC in 2020. *See Harris v. Maximus, Inc.*, No. 2:20-CV-38, 2020 WL 3980205, at *3 (S.D. Miss. July 14, 2020) (liberally construing plaintiff's allegations and finding that defendant's alleged

repeated harassing conduct was sufficient to state a claim for IIED—"at least in cursory fashion").

Leech's allegations "may not be as detailed as they could be, and the facts, once developed in discovery, may not ultimately support a claim [for IIED]." *Id.* Leech, however, has "alleged enough to survive the present motion." *Id.*

vi.    Count 11: Negligent Supervision Claim

Leech does not address the negligent supervision claim. As stated above, "[a] plaintiff abandons claims when [she] fails to address the claims or oppose a motion challenging those claims." *Terry Black's Barbecue, L.L.C.*, 22 F.4th at 459. Accordingly, the Court grants MC's motion as to this claim and dismisses it with prejudice.

vii.    Count 12: Bad Faith/Reckless Disregard

"Bad faith" and "reckless disregard" are not separate causes of action. Rather, they are types of conduct used to support breach-of-the-implied-covenant-of-good-faith-and-fair-dealing claims or punitive damage claims. *See, e.g.*, *Johnston v. Palmer*, 963 So. 2d 586, 594 (Miss. Ct. App. 2007) (bad faith); Miss. Code Ann. § 11-1-65(1)(a) (reckless disregard). Leech's independent claims for bad faith and reckless disregard therefore are dismissed. This dismissal does not affect Leech's claim for the breach of the implied covenant of good faith and fair dealing or her claim for punitive damages.

IV.    Conclusion

The Court has considered all arguments. Those not addressed would not have changed the outcome. For the reasons stated, the Court grants in part and denies in part MC's [30] Partial Motion to Dismiss.

The Court GRANTS MC's motion as to Count 2's and Count 3's disparate impact claims, Count 3's hostile work environment claim, and Count 4's ADEA claim for failure to exhaust administrative remedies and DISMISSES those claims with prejudice.

The Court GRANTS MC's motion as to Count 4's Age Discrimination in Violation of Title VII claim, Count 6, Count 7, Count 8, Count 11, and Count 12 for failure to state a claim and DISMISSES those claims with prejudice.

The Court DENIES MC's motion as to Count 10.

The parties must promptly notify Magistrate Judge F. Keith Ball of this decision and submit a proposed order lifting the stay within seven days from today.

SO ORDERED AND ADJUDGED this the 17th day of January, 2023.

s/ *Kristi H. Johnson*
UNITED STATES DISTRICT JUDGE